**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

**SANDRA VEGA,**

        **Plaintiff,**

v.                                           **Case No. 6:23-cv-1239-PGB-DCI**

**SOLAR-RAY, INC., MICHAEL
BROWN and CARL WEIRICH,**

        **Defendants.**

---

## ORDER

This employment-discrimination case is before the Court on Defendants' Motion to Dismiss Amended Complaint for Continued Failure to State Particulars (*See* Doc. 15 (the "**Motion**")). Having considered the Motion and Plaintiff's response (Doc. 26), the Court finds that the Motion must be denied.

**I.      BACKGROUND**

Plaintiff Sandra Vega is Hispanic, specifically Puerto Rican. (Doc. 13, ¶ 12).[1] From August 21, 2017 to May 30, 2023, she worked as a "full-time, salaried employee" with managerial duties for Defendant Solar-Ray, Inc. (*Id.* ¶¶ 13–14). At the beginning of her employment, her annual salary was $78,000.00. (*Id.* ¶ 14). "Throughout her employment," she "performed her duties in an exemplary fashion" and "without significant issue or controversy," and she "possessed all the

---

[1]   The Court accepts as true the Amended Complaint's well-pleaded factual allegations. *See Ziyadat v. Diamondrock Hosp. Co.*, 3 F.4th 1291, 1295 (11th Cir. 2021).

required skills, training, and qualifications" for her job. (*Id.* ¶ 15).

Defendants Michael Brown and Carl Weirich (the "**individual Defendants**") "were the owners and directors of" Defendant Solar-Ray. (*Id.* ¶ 20). Starting around May 2020, Plaintiff suffered employment discrimination from them based on her race, color, and ethnicity as Hispanic. (*Id.* ¶¶ 16–18). The individual Defendants "mistreated" her by: "subject[ing her] to highly offensive, derogatory, and discriminatory remarks and comments about her [r]ace, [c]olor, and [e]thnicity" as Hispanic; "ridicul[ing] and ma[king] fun of [her] and other Hispanic employees"; calling all the Hispanic employees "Mexicans" in a "derogatory fashion" and "without regard to each employee's national origin"; refusing to recognize Plaintiff's Puerto Rican identity; becoming "abusive, hostile[,] and aggressive" with her; and "scream[ing], insult[ing], and demean[ing her] and her Hispanic co[]workers." (*Id.* ¶¶ 19–23).

The individual Defendants "would often humiliate and ridicule Plaintiff and other employees by mockingly playing Mexican music, wearing a Mexican hat[,] and dancing in [an] offensive fashion in front of Plaintiff." (*Id.* ¶ 24). "On a daily basis, [they] made derogatory remarks about Plaintiff'[s] [r]ace, [c]olor[,] and [e]thnicity, and they freely expressed their contempt and hatred against Plaintiff and Hispanic people, including customers." (*Id.* ¶ 25). They "ridiculed both employees and customers who had a Hispanic accent." (*Id.*).

In addition to engaging in the above misconduct, the individual Defendants "subjected [Plaintiff] to excessive job scrutiny, surveillance, and mistreatment"

and "blamed Plaintiff and her Hispanic co[]workers for anything wrong that happened at the workplace." (*Id.* ¶ 26). Because the individual Defendants disliked Plaintiff based on her race, color, and ethnicity as Hispanic, they sought "excuses to humiliate her, get her in trouble, and fire her." (*Id.* ¶ 28). As a result, Plaintiff "lived in anxiety and fear of losing her job." (*Id.* ¶ 29). "Every day," she "d[id] her best to please" the individual Defendants, but her efforts were in vain and "they became more hostile towards" her. (*Id.*). Eventually, the individual Defendants "demoted [her] and reduced [her] salary." (*Id.* ¶ 30).

Around April 2023, Plaintiff informed Defendants of the discrimination that she was suffering. (*Id.* ¶ 33). "Soon after" she complained about the discrimination, "Defendants once again demoted [her] and reduced her salary." (*Id.* ¶ 35). On May 30, 2023, Plaintiff's employment with Defendant Solar-Ray ended. (*Id.* ¶ 36). She claims that she was "constructively discharged." (*Id.*).

In June 2023, Plaintiff filed the initial Complaint in this case against Defendants. (*See* Doc. 1). Alleging violations of 42 U.S.C. § 1981, she brought a discrimination count and a retaliation count against each Defendant (for a total of six counts). (Doc. 1). Defendants moved to dismiss the Complaint for failure to state a claim, arguing that the Complaint lacked specific factual allegations, especially concerning but-for causation. (*See* Doc. 12). In response, Plaintiff filed the Amended Complaint, adding some factual allegations and explicitly pleading but-for causation. (*See* Doc. 13). The Amended Complaint does not otherwise substantively differ from the initial Complaint. (*Compare id.*, *with* Doc. 1).

## II.   LEGAL STANDARD

A court should dismiss a complaint for failure to state a claim upon which relief can be granted "only when the plaintiff's factual allegations, if true, don't 'allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Ziyadat v. Diamondrock Hosp. Co.*, 3 F.4th 1291, 1295 (11th Cir. 2021) (alteration in original) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)); *see* FED. R. CIV. P. 12(b)(6). "In determining whether allegations satisfy this standard, [the court] must 'view the complaint in the light most favorable to the plaintiff and accept all of the plaintiff's well-pleaded facts as true.'" *Id.* (quoting *Am. United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1057 (11th Cir. 2007)). However, at the same time, the court must disregard "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678; *accord Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (requiring a plaintiff to allege "more than labels and conclusions" because "a formulaic recitation of the elements of a cause of action will not do").

## III.  DISCUSSION

In the Motion, Defendants contend that the Amended Complaint still lacks the "specific facts" necessary to show that Defendants treated Plaintiff differently from other employees, used improper language, or altered her employment for discriminatory or retaliatory reasons. (Doc. 15, ¶ 2). To emphasize this alleged lack of specifics, Defendants pose rhetorical questions—unanswerable, they say, from the Amended Complaint—about whether their place of business employed other

Hispanic individuals besides Plaintiff, whether Plaintiff was "displaced" in favor of a non-Hispanic individual, whether Defendants "slur[red] names for Hispanic[ individuals] once, twice, a hundred times, [or] a thousand times" during Plaintiff's six years of employment, and whether Defendants levelled "expletives . . . directly at" Plaintiff or merely levelled "constant expletives into the air." (*Id.* ¶ 3). Moreover, Defendants assert that *Comcast Corp. v. National Ass'n of African American-Owned Media*, 140 S. Ct. 1009 (2020), changed the required pleading standard for section 1981 cases from notice pleading to specific fact pleading. (Doc. 15, ¶ 4). The Court disagrees on all points.

For starters, *Comcast* did not create a new pleading standard for section 1981 cases. In *Comcast*, the Supreme Court simply held that a section 1981 "plaintiff must initially plead and ultimately prove that, but for race, [she] would not have suffered the loss of a legally protected right." 140 S. Ct. at 1019. In other words, the Supreme Court clarified that section 1981 requires but-for causation rather than another causation standard. *See id.* In fact, the Supreme Court specifically contemplated application of the usual notice pleading standard in section 1981 cases when it declined to "pass on whether [the complaint at issue] 'contain[ed] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face' under the but-for causation standard." *Id.* (quoting *Iqbal*, 556 U. S. at 678–79 (internal quotation marks omitted)). And since *Comcast*, the Eleventh Circuit has continued to apply the *Twombly-Iqbal* notice pleading standard in section 1981 cases. *See, e.g.*, *Ziyadat*, 3 F.4th at 1295–96. In addition

5

to *Comcast*, Defendants cite two nonbinding cases to support a heightened pleading standard for section 1981 claims: *Rodemaker v. Shumphard*, 859 F. App'x 450 (11th Cir. 2021),[2] and *Lemon v. Myers Bigel, P.A.*, 985 F.3d 392 (4th Cir. 2021). (*See* Doc. 15, ¶¶ 3–4). But those cases apply the *Twombly-Iqbal* standard, too. *See Rodemaker*, 859 F. App'x at 451 ("A complaint must 'give the defendant fair notice of what the claim is and the grounds upon which it rests.'" (quoting *Twombly*, 550 U.S. at 555)); *Lemon*, 985 F.3d at 399–400 (applying *Twombly* and *Iqbal*).

As to the level of specificity in the Amended Complaint, the Court notes that the answers to many of Defendants' rhetorical questions can be found there. Plaintiff alleges that "Defendants ridiculed and made fun of [her] and other Hispanic employees," thereby indicating that Defendants' place of business employed other Hispanic individuals besides Plaintiff. (Doc. 13, ¶ 22). Regarding how often the anti-Hispanic slurs occurred, Plaintiff asserts that the individual Defendants "made derogatory remarks" about her race, color, and ethnicity as Hispanic "[o]n a daily basis" and "freely expressed their contempt and hatred against Plaintiff and Hispanic people, including customers." (*Id.* ¶ 25). It suffices that Plaintiff allegedly faced "daily" slurs "freely expressed"; she need not plead a number. That said, considering Plaintiff's position as a "full-time, salaried employee" with managerial duties, the Court can reasonably infer a number in the

---

[2] "Unpublished opinions are not controlling authority and are persuasive only insofar as their legal analysis warrants." *Bonilla v. Baker Concrete Const., Inc.*, 487 F.3d 1340, 1345 (11th Cir. 2007).

hundreds, at least, given the three years (from May 2020 to May 2023) that Plaintiff purportedly suffered employment discrimination. (*See id.* ¶¶ 14, 18, 36). Regarding whether the slurs were aimed at Plaintiff, at everyone, or at no one in particular, the Amended Complaint states that the individual Defendants directed their misconduct at Plaintiff, her Hispanic coworkers, and Hispanic customers by: using the term "Mexican" as a derogatory label for all Hispanic employees regardless of whether an employee was from Mexico; "ridicul[ing]" employees and customers with Hispanic accents; "scream[ing], insult[ing], and demean[ing]" Hispanic employees including Plaintiff; "mockingly playing Mexican music, wearing a Mexican hat[,] and dancing in [an] offensive fashion in front of Plaintiff"; and "blam[ing]" Hispanic employees including Plaintiff "for anything wrong that happened at the workplace." (*Id.* ¶¶ 22–26).

The only rhetorical question about which the Court is left to speculate is whether Plaintiff was pushed aside to make way for a non-Hispanic individual. But the failure to plead that a non-Hispanic individual reaped the benefits of Defendants' misconduct is not fatal to Plaintiff's section 1981 claims. Although "[b]eing replaced by someone outside one's protected class can help to establish [a] prima facie case of discrimination" at the summary-judgment stage, *Ossmann v. Meredith Corp.*, 82 F.4th 1007 (11th Cir. 2023), a section 1981 plaintiff "need not allege facts sufficient to make out a classic *McDonnell Douglas*[3] prima facie

---

[3] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) (setting the burden-shifting framework for summary judgment in employment-discrimination cases that rely on circumstantial evidence to establish discriminatory intent).

case" at the pleading stage, *Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1246 (11th Cir. 2015) (quoting *Davis v. Coca-Cola Bottling Co. Consol.*, 516 F.3d 955, 974 (11th Cir. 2008)). *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002) ("[U]nder a notice pleading system, it is not appropriate to require a plaintiff to plead facts establishing a prima facie case because the *McDonnell Douglas* framework does not apply in every employment discrimination case.").

To the extent that Defendants contend that the Amended Complaint inadequately pleads the elements of a discrimination or retaliation claim under section 1981, the Court disagrees. "[T]o state a claim [of discrimination] under [section] 1981, [Plaintiff] must allege (1) intentional racial discrimination (2) that caused a contractual injury." *Ziyadat*, 3 F.4th at 1296. And "[t]o establish a claim of retaliation under . . . section 1981, [P]laintiff must prove" that (1) she "engaged in statutorily protected activity"; (2) she "suffered an adverse employment action"; and (3) "there was some causal relation between the two events." *Goldsmith v. Bagby Elevator Co.*, 513 F.3d 1261, 1277 (11th Cir. 2008). As to discrimination, the Amended Complaint alleges that Defendants "intentionally discriminated against Plaintiff" based on her race, color, and ethnicity as Hispanic and "willfully interfered with . . . [her] enjoyment of all benefits, privileges[,] terms[,] and conditions of the contractual relationship of her employment." (Doc. 13, ¶ 38). And as to retaliation, the Amended Complaint alleges that Defendants constructively "terminated Plaintiff's contractual relationship in retaliation for [her] opposition to unlawful employment practices" based on her race, color, and ethnicity as

Hispanic. (*Id.* ¶¶ 93, 105, 117). The specific facts set forth in the Amended Complaint make these allegations "plausible." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

## IV. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** that Defendants' Motion to Dismiss Complaint for Continued Failure to State Particulars (Doc. 15) is **DENIED**.

**DONE AND ORDERED** in Orlando, Florida on November 17, 2023.

PAUL G. BYRON
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties

9